IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SRIKANTH ARAVAMUTHAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:23-CV-01412-N |
| | § | |
| UR M. JADDOU, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

This Order addresses Plaintiff Srikanth Aravamuthan's motion for summary judgment [34] and Defendants Ur M. Jaddou and United States Citizenship and Immigration Services' ("USCIS") cross-motion for summary judgment [36]. Because USCIS did not act arbitrarily, capriciously, or not in accordance with the law in denying Aravamuthan's EB-1 visa petition, the Court denies Aravamuthan's motion and grants Defendants' motion.

## I. ORIGINS OF THE MOTIONS

Aravamuthan seeks an EB-1 "extraordinary ability" visa, which would allow him to obtain permanent residence in the United States. *See* 8 U.S.C. § 1153(b)(1)(A). He is a citizen of India and was admitted to the United States on a temporary basis through an O-1 employer-sponsored visa. R. at 709–12 [21, 28]. Aravamuthan asserts that he is "an international leader in the field of business, particularly in the area of management consulting." Pl.'s Am. Compl. ¶ 1 [19].

In December 2019, Aravamuthan filed his first I-140 petition with the United States Citizenship and Immigration Services, requesting immigrant classification as a noncitizen of extraordinary ability.[1]  R. at 1426–34.  USCIS denied the petition, and Aravamuthan sought judicial review of USCIS's decision in federal court in New Jersey.  Pl.'s Am. Compl. ¶ 31.  USCIS then reopened the petition and requested additional evidence from Aravamuthan.  Following his submission of additional evidence, USCIS again denied his petition.  R. at 1073–84.  Aravamuthan did not challenge this decision further.

Then, in April 2022, Aravamuthan filed his second I-140 petition — the petition at issue in this case — again requesting classification as a noncitizen of extraordinary ability. *Id.* at 648–88.  USCIS denied the petition in June 2022.  *Id.* at 372–80.  Aravamuthan filed a motion to reconsider, and after reconsideration, and USCIS affirmed the denial. *Id.* at 318–27.  Aravamuthan sought judicial review of the denial in this Court in June 2023. *See generally* Pl.'s Compl. [1].  USCIS then reopened Aravamuthan's petition and issued a Notice of Intent to Deny ("NOID").  R. at 282–302.  Aravamuthan responded to the NOID with additional evidence.  *See id.* at 1–21.  USCIS ultimately denied the petition in November 2023.  *Id.*

Aravamuthan seeks judicial review of the denial of his EB-1 petition and moves for summary judgment.  *See* Pl.'s Mot. Br. 10 [35].  He argues that the denial was arbitrary, capricious, and not in accordance with the law.  *Id.* at 48.  Defendants Jaddou and USCIS filed a cross-motion for summary judgment.  *See generally* Defs.' Cross Mot. [36].

---

[1] The Court, following the Supreme Court's lead, uses the term "noncitizen" as equivalent to the statutory term "alien."  *See, e.g.*, *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020).

## II. LEGAL STANDARDS

### A. Judicial Review of Agency Action

The usual "genuine dispute of material fact" standard for summary judgment does not apply to claims under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06. *See Gadhave v. Thompson*, 2023 WL 6931334, at *1 (N.D. Tex. 2023). Instead, when "a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal." *Redeemed Christian Church of God v. U.S. Citizenship & Immigr. Servs.*, 331 F. Supp. 3d 684, 694 (S.D. Tex. 2018) (quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)). Under APA, a district court may reverse an agency decision only if the plaintiff shows that the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Nat'l Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1475 (5th Cir. 1989). An agency acts arbitrarily and capriciously if it

> has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Tex. Oil & Gas Ass'n v. E.P.A.*, 161 F.3d 923, 933 (5th Cir. 1998) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). A court's task is "merely to ask whether the agency considered the relevant facts and articulated a satisfactory explanation for its decision." *Amin v. Mayorkas*, 24 F.4th 383, 393 (5th Cir. 2022) (citing *Dep't of Com. v. New York*, 558 U.S. 752, 773 (2019)).

### B. *Demonstrating Extraordinary Ability*

"The Immigration Act of 1990 carves out an exception" to the typical employment-based immigration application process for those "with 'extraordinary ability' who have demonstrated 'sustained national or international acclaim.'" *Joseph v. Dir. of Tex. Serv. Ctr., U.S. Citizenship & Immigr. Servs.*, 2025 WL 458001, at *1 (5th Cir. 2025) (unpub.) (per curiam) (quoting 8 U.S.C. § 1153(b)(1)(A)(i)). "An EB-1 visa is the most difficult type of employment visa to obtain" and "is colloquially referred to as the 'Einstein' or 'genius' visa." *Id.* (citing *Amin*, 24 F.4th at 386–87; and *Kazarian v. U.S. Citizenship & Immigr. Servs.*, 596 F.3d 1115, 1120 (9th Cir. 2010)).

The Immigration Act of 1990 does not define "extraordinary ability." So, in 1991, the Immigration and Naturalization Service "issued a notice-and-comment rule defining the term as: 'a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor.'"[2] *Id.* (quoting 8 C.F.R. § 204.5(h)(2)).

USCIS has adopted a two-step approach to adjudicating EB-1 petitions. *See id.* at *2. First, the applicant can either (1) submit evidence of a major one-time achievement, such as receiving a Nobel Peace Prize or an Olympic Gold Medal, or (2) present evidence satisfying at least three of the ten criteria outlined in 8 C.F.R. § 204.5(h)(3). *Id.* at *1. USCIS then "assesses the submitted evidence to establish which, if any, of the ten criteria

---

[2] The Fifth Circuit determined that this definition is consistent with the best meaning of the Immigration Act of 1990. *Id.* at *1 n.2 (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024)).

are met by a preponderance of the evidence." *Id.* at *2 (citing U.S. CITIZENSHIP & IMMIGR. SERVS., DEP'T OF HOMELAND SEC., PM-602-0005.1, EVALUATION OF EVIDENCE SUBMITTED WITH CERTAIN FORM I-140 PETITIONS; REVISIONS TO THE *ADJUDICATOR'S FIELD MANUAL (AFM)* CHAPTER 22, *AFM* UPDATE AD11-14, at 5 (2010) ("POLICY MEMO")). These ten criteria include:

(i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

(ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

(iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;

(iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;

(v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

(vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

(vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

(viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

(ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

MEMORANDUM OPINION AND ORDER – PAGE 5

(x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

8 C.F.R. § 204.5(h)(3)(i)–(x).  Second, "USCIS conducts a final merits determination to decide whether the totality of the evidence is sufficient to demonstrate the 'required high level of expertise.'"  *Id.* (citing POLICY MEMO at 5); *see also Amin*, 24 F.4th at 388.

## III.    THE COURT GRANTS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Aravamuthan avers that USCIS acted arbitrarily and capriciously in both steps of the EB-1 petition adjudication process.  Pl.'s Mot. Br. 17–47.  He also asserts that the differences in USCIS's analysis in the O-1 decisions and in the prior EB-1 step-one decisions evidence that USCIS's most recent denial of the EB-1 petition was arbitrary and capricious.  *Id.* at 13–16.  Defendants defend USCIS's denial of the EB-1 petition, stating that USCIS considered the evidence and provided a rational connection between the facts in the record and its decision.  *See generally* Defs.' Cross Mot.  Having reviewed the record and the parties' briefings, the Court holds that USCIS's decision to deny Aravamuthan's EB-1 petition was not arbitrary, capricious, or otherwise not in accordance with the law.

### A.  *USCIS's Step-One Analysis Was Not Arbitrary or Capricious*

Aravamuthan claims that he meets seven of the step-one regulatory criteria for extraordinary ability, while USCIS determined that the submitted evidence supports that Aravamuthan meets two of the criteria.  R. at 005–17.  Aravamuthan contends that USCIS acted arbitrarily, capriciously, and not in accordance with the law in its analysis of six of the criteria.  Pl.'s Mot. Br. 17–39.  The Court reviews USCIS's handling of each of the disputed criteria in turn.

*1. Membership in Associations Requiring Outstanding Achievements* — To meet the section 204.5(h)(3)(ii) criterion, an applicant must present documentation of his "membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields."   8 C.F.R.  § 204.5(h)(3)(ii). Aravamuthan presented evidence of his membership on the Council of Advisors of Athena School of Management and the Advisory Board of Disha Kiran.  R. at 005–07.

Regarding the Council of Advisors, Aravamuthan submitted a letter from Professor Aditya Singh and information on Athena School of Management. *See id.* at 892–926.  After considering this evidence, USCIS found that "no evidence was submitted to show the school is recognized as an association, or that the group of individuals hired or invited to serve as advisors to the school, is considered an association in the field of endeavor." *Id.* at 005.  And regarding the Advisory Board, Aravamuthan submitted letters from Disha Kiran CEO Dr. Anil Yadav, information on Disha Kiran, and a description of the qualifications for members of the Advisory Board. *Id.* at 433–44, 927–41.  Again, USCIS determined that the "evidence of record does not show Disha Kiran is an association" or that it "requires outstanding achievements of its members as a minimum requirement for membership." *Id.* at 006.  While the minimum requirements presented "a higher threshold for membership than simply a minimum number of years of experience," USCIS found that Aravamuthan had "not demonstrated that having the appropriate experience is sufficient to show that such achievements are considered to be outstanding in [his] field." *Id.* at 007.  USCIS ultimately determined that the evidence reflecting his membership on

these advisory boards was insufficient to meet the plain language of the criterion "without documentary evidence demonstrating that each board is considered an association in the field, and that those associations require outstanding achievement of their members, as judged by recognized national or international experts in their disciplines or fields." *Id.* at 007.

This record shows that USCIS conducted a thorough analysis of the evidence Aravamuthan submitted, including discussion of the facts and an explanation for the decision. The Court accordingly finds that USCIS reasonably concluded that Aravamuthan failed to satisfy the section 204.5(h)(3)(ii) criterion.

   ***2. Published Material About the Applicant*** — To meet the section 204.5(h)(3)(iii) criterion, an applicant must present published "material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material." 8 C.F.R. § 204.5(h)(3)(iii). Aravamuthan presented (1) an article in *Forbes*, (2) an article in *International Business Times*, and (3) an article in *Biz Community*. R. at 007–08.

   First, Aravamuthan presented an article in *Forbes* titled "How Your Personal Brand Will Impact The Growth Of Your Company." *Id.* at 967–71. This five-page article includes a quote that is about a half-page long by Aravamuthan about branding. *Id.* at 968. USCIS did not credit this article as meeting section 204.5(h)(3)(iii) because it "is not about [Aravamuthan] and his work in the field," but instead "about personal branding, and [Aravamuthan's] brief statements were included as part of the article." *Id.* at 009. Second,

MEMORANDUM OPINION AND ORDER – PAGE 8

he submitted an article in *International Business Times* titled "The Benefits Of Using Data Analytics In The Telecom Industry." *Id.* at 944–48. USCIS did not credit this article because it "is not about him and his work in the field" but "about the industry" and "uses [his] 'expert' opinion as a consultant." *Id.* at 008. The published material must be specifically about the applicant and focus on his personal work in the relevant field, not merely relate to the applicant's work, mention his name, or include his photo. *Gadhave*, 2023 WL 6931334, at *3–4. As such, it was reasonable for USCIS to determine that the *Forbes* and *International Business Times* articles fail this criterion. *See Joseph*, 2025 WL 458001, at *3 (affirming USCIS determination that articles quoting and mentioning the applicant but not primarily about the applicant did not meet this criterion).

Third, Aravamuthan presented an article in *Biz Community* titled "Srikanth, an entrepreneur of many talents, is challenging traditional digital marketing methods." R. at 960–62. USCIS did not credit this article because it determined that the evidence submitted suggests that the purpose of *Biz Community* "is to serve as a promotional platform to promote one's business," which is "in line with the article submitted as part of the evidence, where [Aravamuthan] appears to be promoting personal branding." *Id.* at 009. Moreover, USCIS found that the article "makes generalized assertions about [Aravamuthan], without providing specific information about his work in the field." *Id.* After reviewing the evidence and USCIS's interpretation of the evidence, the Court finds that its determination was not "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Tex. Oil & Gas Ass'n*, 161 F.3d at 933.

USCIS named the articles Aravamuthan submitted and stated why it found each article insufficient. Its reasoning does not run counter to the proffered evidence, so the Court determines that USCIS's analysis of the section 204.5(h)(3)(iii) criterion was neither arbitrary nor capricious.

**3. *Judge of the Work of Others*** — To meet the section 204.5(h)(3)(iv) criterion, an applicant must present evidence of his "participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought." 8 C.F.R. § 204.5(h)(3)(iv). Aravamuthan submitted evidence that he evaluated the business models and strategies of companies as a management consultant and as a member of the Council of Advisors of Athena School of Management and the Advisory Board of Disha Kiran. R. at 433–44, 472–78, 715–38, 867–76, 892–941, 977–89.

USCIS listed the evidence that Aravamuthan submitted and then found that the evidence did not meet this criterion. *Id.* at 009–11. It determined that the evidence of Aravamuthan's activities as a management consultant — such as providing companies business advice and evaluating their business strategies— is not equivalent to judging the work of others in the same or an allied field. *See id.* The Court finds a rational connection between the regulation's phrase "judge of the work of others" and the agency's distinction between that and business consulting. USCIS also determined that the evidence of his roles on the advisory boards did not establish that he has judged the work of others. *Id.* at 010. The Court determines that this decision does not run counter to Aravamuthan's proffered evidence.

MEMORANDUM OPINION AND ORDER – PAGE 10

Aravamuthan argues that USCIS illegitimately determined that the judging of the work of others must occur outside the scope of his employment to satisfy this criterion. Pl.'s Mot. Br. 25–26. Many "federal courts, including courts in this district, have held that no such requirement exists." *Onaghise v. Dep't of Homeland Sec.*, 2022 WL 4073344, at *5 (N.D. Tex. 2022) (collecting cases). The Court need not address this issue, however, because USCIS's determination did not depend on an out-of-the-scope-of-employment standard. *See* R. at 009–11. Instead, in its final decision, USCIS found that Aravamuthan did not act as a judge of the work of others in any capacity, whether inside the scope of his employment or outside of it.

Aravamuthan also asserts that USCIS ignored evidence contradicting its position. Pl.'s Mot. Br. 26–27. "Total failure to consider important evidence is a basis for setting aside agency action." *Amin*, 24 F.4th at 374. But there is no requirement that USCIS must have specifically addressed every document that Aravamuthan submitted for a court to find that USCIS engaged in reasoned decisionmaking. *Gadhave*, 2023 WL 6931334, at *5; *see also Chivukula v. Allen*, 2023 WL 4504601, at *6 (N.D. Tex. 2023) (stating USCIS did not ignore or improperly discount evidence by failing to discuss each letter presented (collecting cases)). While USCIS did not expressly parse each piece of evidence offered by Aravamuthan, it did analyze evidence of his work as a management consultant, consider several examples of his evaluation of companies' business strategies, and discuss his role

on the Advisory Board of Disha Kiran.[3]  R. at 009–11.  This is sufficient.  Thus, the Court declines to set aside USCIS's analysis on the section 204.5(h)(3)(iv) criterion.

    *4.    Original Contributions of Major Significance* — To meet the section 204.5(h)(3)(v) criterion, an applicant must present evidence of his "original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field."  8 C.F.R. § 204.5(h)(3)(v).  Aravamuthan challenges USCIS's analysis of letters he submitted from industry professionals regarding his work developing (1) a customer-service process for Vodafone, a major telecommunications company, and (2) an operational model and strategy for Bonzer, an environmental startup company. R. at 146–47, 157–58, 715–23, 735–38, 786–87, 879–80, 990–1008.

    With respect to the customer-service process Aravamuthan developed for Vodafone, USCIS found that Aravamuthan relied heavily on expert letters to support his assertion that other telecommunications companies also adopted the process "without providing specific examples or the names of those organizations, and the major significance that [his] contribution had in the field as a whole."  *Id.* at 013.  "Courts have routinely affirmed agency decisions that held § 204.5(h)(3)(v) 'requires substantial influence beyond one's employer, clients, or customers.'"  *Goncharov v. Allen*, 2022 WL 17327304, at *5 (N.D. Tex. 2022) (quoting *Strategati, LLC v. Sessions*, 2019 WL 2330181, at *6 (S.D. Cal. 2019)).  For the applicant's contributions to be "of major significance," the

---

[3] Moreover, USCIS explained that although it did not reference every letter, it had "reviewed and considered each [letter].  USCIS has also reviewed and considered each piece of evidence submitted, but for the sake of time and space in preparing this notice, the agency has only addressed part of the documentary evidence submitted."  R. at 021.

evidence must demonstrate that his work has been widely adopted or replicated by industry actors unaffiliated with him. *See Amin*, 24 F.4th at 394. And "general allegations that [the applicant's] work is 'widely used' by industry actors are insufficient." *Gadhave*, 2023 WL 6931334, at *4. "Letters that lack specifics and simply use hyperbolic language . . . are not considered to be probative." *Id.* As such, the Court determines that USCIS's analysis of Aravamuthan's development of the Vodafone process was in accordance with the law.

Regarding the Bonzer model, in addition to letters from industry professionals discussing the model, Aravamuthan presented evidence that the model is taught as part of the "Living Labs" curriculum at the University of Massachusetts Amherst. R. at 146–47, 879, 990–91. USCIS concluded that teaching the Bonzer model "in a summer class" at one university does not show that the model "changed the entire field; such that other experts are implementing [Aravamuthan's] model in their own work." *Id.* at 013. In so doing, USCIS considered the relevant facts and articulated a satisfactory explanation.

As such, the Court concludes that USCIS's determination on this criterion was not arbitrary or capricious.

**5.** ***Authorship of Scholarly Articles*** — To meet the section 204.5(h)(3)(vi) criterion, an applicant must present evidence of his "authorship of scholarly articles in the field, in professional or major trade publications or other major media." 8 C.F.R. § 204.5(h)(3)(vi). Aravamuthan submitted two of his works in support of this criterion: a paper published in the *International Journal for Research in Applied Science & Engineering Technology*, and an article published in *Business View Magazine*. R. at 014.

USCIS determined that Aravamuthan met this criterion based on the paper in the *International Journal for Research in Applied Science and Engineering Technology.  Id.*

Now, Aravamuthan challenges USCIS's decision not to credit the article in *Business View Magazine.*  Pl.'s Mot. Br. 34–35.  However, because USCIS concluded that Aravamuthan met the section 204.5(h)(3)(vi) criterion, any error in USCIS's evaluation of the *Business View Magazine* article is harmless, and the Court declines to consider Aravamuthan's objection.  *See, e.g.*, *Berardo v. U.S. Citizenship & Immigr. Servs.*, 2020 WL 6161459, at *3 n.2 (D. Or. 2020) (declining to address applicant's argument that USCIS erred by failing to attribute certain evidence for criteria that USCIS concluded he had met as any error would have been harmless).

**6.  *Leading or Critical Role for Distinguished Organizations*** — To meet the section 204.5(h)(3)(viii) criterion, an applicant must present evidence that he "has performed in a leading or critical role for organizations or establishments that have a distinguished reputation."  8 C.F.R. 204.5(h)(3)(viii).  To meet this criterion, Aravamuthan submitted evidence regarding his roles at (1) Deloitte, (2) KPMG, (3) the Council of Advisors of Athena School of Management, and (4) Bonzer.  R. at 121–27, 719–23, 735–83, 790–864, 879–93.

USCIS explained that in determining whether a position is a leading role, it "looks at whether the evidence establishes that the person is (or was) a leader within the organization or establishment or a division or department thereof."  *Id.* at 015.  Further, in determining whether a position is a critical role, "USCIS looks at whether the evidence establishes that the person has contributed in a way that is of significant importance to the

MEMORANDUM OPINION AND ORDER – PAGE 14

outcome of the organization or establishment's activities or those of a division or department of the organization or establishment." *Id.*

Regarding his roles at KPMG and Deloitte, USCIS decided that Aravamuthan did not provide sufficient evidence about "his overall responsibilities and rank within the organizational hierarchy" to establish his roles at either organization were leading or critical. *Id.* at 016–17. First, USCIS concluded that the letters from Siddhartha Tipnis — an employee at Deloitte — and Abishek Tiwary — an employee at KPMG — did not demonstrate that Aravamuthan's role was leading or critical. *Id.* at 015, 017. In analyzing the section 204.5(h)(3)(viii) criterion, letters "can be particularly helpful to [USCIS] . . . so long as the letters contain detailed and probative information that specifically addresses how the person's role . . . was leading or critical." U.S. CITIZENSHIP & IMMIGR. SERVS., DEP'T OF HOMELAND SEC., POLICY MANUAL vol. 6, pt. F, ch. 2, sec. (B)(1) ("POLICY MANUAL"). Here, USCIS reasonably discredited the letters, finding that they did not discuss Aravamuthan's position in the overall organizational hierarchies as to show he had a leading or critical role and were not supported by objective documentary evidence. R. at 015–17. Moreover, USCIS determined that Aravamuthan's evidence of "achieving success with . . . his employers" did not establish that he had a leading or critical role at the organizations. *Id.* This is a reasonable determination as being successful in his roles at KPMG and Deloitte is not analogous to contributing "in a way that is of significant importance to the outcome of the organization or establishment's activities or those of a division or department of the organization or establishment." POLICY MANUAL at vol. 6, pt. F, ch. 2, sec. (B)(1). As USCIS provided appropriate reasons

for its decision and for discounting the available evidence related to Aravamuthan's roles at KPMG and Deloitte, USCIS has demonstrated "that it engaged in a reasoned decisionmaking process, thus satisfying the lenient arbitrary-and-capricious standard." *Visinscaia v. Beers*, 4 F. Supp. 3d 126, 135 (D.D.C. 2013).

Relatedly, USCIS determined that Aravamuthan's role as a member of the Council of Advisors of Athena School of Management was not leading or critical.  USCIS determined that each of the three members of the Council of Advisors "was selected because of the vast experience each gathered in their own fields of expertise," but the evidence failed "to support the claim that one [member] is more important than the other, because of the difference in their fields of expertise."  R. at 016.  The Court finds that USCIS's conclusion that Aravamuthan's role on the Council of Advisors was not leading or critical was not arbitrary or capricious and declines to substitute its own judgment for USCIS's.  *See Amin*, 24 F.4th at 393.

Regarding his role at Bonzer — an environmental startup company based in Massachusetts — USCIS determined that Aravamuthan had not established that Bonzer has a distinguished reputation.  R. at 016–17, 130.  "Merriam-Webster's online dictionary defines 'distinguished' as 'marked by eminence, distinction, or excellence' or 'befitting an eminent person.'"  POLICY MANUAL at vol. 6, pt. F, ch. 2, sec. (B)(1).  Relevant factors for determining if an organization has a distinguished reputation include the relative size or longevity of an organization, the scale of its customer base, and relevant media coverage. *See id.*  Moreover, for startup companies, USCIS "may consider evidence that the business has received significant funding from government entities, venture capital funds, angel

investors, or other such funders commensurate with funding rounds generally achieved for that startup's stage and industry, as a positive factor regarding its distinguished reputation." *Id.* Here, USCIS considered an article titled "6 Top Automobile Startups and Companies in Massachusetts," in which Bonzer was ranked number five. R. at 126. USCIS found that this did not establish that Bonzer is marked by eminence, distinction, or excellence. R. at 017. USCIS also noted that Aravamuthan did not present evidence that Bonzer had received significant funding commensurate with funding rounds generally achieved for Bonzer's stage and industry. *Id.* at 016. The Court determines that this was a reasonable conclusion based on the evidence in the record.

Having reviewed the record and USCIS's determination, the Court determines that USCIS did not rely on factors that Congress did not intend for it to consider, entirely fail to consider an important aspect of the problem, offer an explanation that runs counter to the evidence, or offer an implausible explanation. *See Tex. Oil & Gas Ass'n*, 161 F.3d at 933. Accordingly, the Court declines to reweigh the evidence and finds that USCIS's determination regarding this criterion was not arbitrary or capricious.

In sum, USCIS reviewed Aravamuthan's evidence for all the disputed criteria, and it credited his accomplishments but determined that he did not meet his burden. The Court holds that USCIS's decision to view Aravamuthan's evidence as insufficient at step one is reasonable and not arbitrary or otherwise unlawful. And, because the Court determines that USCIS's step-two conclusion is valid, *see infra* Section III.B, the Court finds that any evidentiary error USCIS might have made at step one would have had no bearing on either the procedure used or the substance of the decision reached by USCIS, and any remand to

MEMORANDUM OPINION AND ORDER – PAGE 17

rectify the evidentiary error would be of no substantive or procedural benefit to Aravamuthan. *See Chivukula*, 2023 WL 4504601, at *9 (citing *Kazarian*, 596 F.3d at 1119; and *Rijal v. U.S. Citizenship & Immigr. Servs.*, 772 F. Supp. 2d 1339, 1348 (W.D. Wash. 2011), *aff'd* 683 F.3d 1030 (9th Cir. 2012)).

### B.  USCIS's Step-Two Determination Was Not Arbitrary or Capricious

Despite finding that Aravamuthan only met two of the step-one criteria, USCIS proceeded to the second step of the analysis — the final merits determination.  R. at 017–20.  The second step is the "ultimate statutory inquiry of whether the applicant has 'extraordinary ability' as 'demonstrated by sustained national or international acclaim.'" *Amin*, 24 F.4th at 395 (quoting 8 U.S.C. § 1153(b)(1)(A)).  Aravamuthan avers that he proved by a preponderance of the evidence that he is an individual of extraordinary ability and that USCIS's decision finding otherwise was arbitrary and capricious.  Pl.'s Mot. Br. 40–47.  As the Fifth Circuit recently explained:

> That underlying standard — whether [the applicant] showed extraordinary ability — combines with our deferential arbitrary-and-capricious review to create a daunting obstacle to the relief [the applicant] seeks.  Extraordinary ability is such an elite level of accomplishment that recognizing it necessarily entails a judgment call.  Arguing that the agency was compelled to find extraordinary ability is a bit like saying that the only possible grade on an exam was an A+.

*Amin*, 24 F.4th at 394–95.

As such, the Court holds that USCIS properly considered Aravamuthan's evidence of his accomplishments but found that Aravamuthan did not meet this stringent standard. USCIS's final merits determination is not contrary to the guiding statute or regulations.  No evidence in the record shows that the final merits determination was otherwise arbitrary,

capricious, or not in accordance with the law. The Court thus declines to set aside a decision that "reflects the reasoned consideration the APA requires." *Id.* at 395.

### C. USCIS Did Not Act Arbitrarily by Reaching Different Conclusions than in the Prior "Extraordinary Ability" Adjudications

Finally, Aravamuthan contends that USCIS's denial of the EB-1 petition at issue in this case was arbitrary and capricious because USCIS (1) determined that Aravamuthan was an individual of extraordinary ability in the O-1 petition adjudications, and (2) found that Aravamuthan met different step-one regulatory criteria in prior denials of his EB-1 petitions. Pl.'s Mot. Br. 13–17. The Court addresses each of these arguments in turn.

First, Aravamuthan argues that USCIS should have approved the EB-1 petition because USCIS previously granted him O-1 nonimmigrant status. Pl.'s Mot. Br. 13–16. The Court disagrees. "Though the prior approval of an O-1 petition is a relevant consideration and can be an indicator of eligibility in adjudicating an immigrant petition for a person with extraordinary ability, it is not determinative." POLICY MANUAL at vol. 6, pt. F, ch. 2, sec. (B)(3). "Each petition is separate and independent and must be adjudicated on its own merits, under the corresponding statutory and regulatory provisions." *Id.* n.50; *see also Pasquarell*, 889 F.2d at 1476 (stating that an agency is not bound by its initial determination in granting a temporary visa when considering a petition for a permanent visa). Accordingly, the Court declines to upend the agency action based on the previous O-1 determination. *See, e.g.*, *Cuckic v. Jaddou*, 2023 WL 2586031, at *2, *6 (S.D.N.Y. 2023) (upholding EB-1 denial after applicant had received temporary O-1 status); *Lapteva v. Schuurmans*, 2025 WL 815087, at *1, *6 (D. Neb. 2025) (same).

MEMORANDUM OPINION AND ORDER – PAGE 19

Second, Aravamuthan avers that USCIS acted arbitrarily in its November 2023 denial of his EB-1 petition because in prior decisions, USCIS had reached different conclusions regarding whether Aravamuthan satisfied certain regulatory criteria. Pl.'s Mot. Br. 16–17. However, USCIS's handling of Aravamuthan's first EB-1 petition is not at issue in this case. And the Court will not review action taken by USCIS regarding his second EB-1 petition prior to its issuance of the November 2023 denial. Courts are empowered to review only final agency action, not preliminary steps taken by USCIS. *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (stating final agency action is the "consummation of the agency's decisionmaking process" from which "legal consequences will flow"). USCIS may correct what it perceives to be errors and perform a new examination of a petition, "even in cases where the new decision reverses a previously favorable decision." *Arbor Home, LLC v. Mayorkas*, 604 F. Supp. 3d 878, 885 (N.D. Cal. 2022), *aff'd*, 2023 WL 4819647 (9th Cir. 2023) (unpub.) (collecting cases); *see also Shah v. Chertoff*, 2007 WL 2948362, at *10 (N.D. Tex. 2007) (finding USCIS may deny an extension to a visa based on a reassessment of qualifications even though the applicant previously received the visa). Here, USCIS's voluntary reopening of Aravamuthan's petition and subsequent issuance a new denial "effectively nullified" all earlier denials. *See Arbor Home*, 604 F. Supp. 3d at 885. Accordingly, the final agency action at issue in this case — and thus the only action the Court may review — is the November 2023 denial. So, the Court will not scrutinize the step-one analysis that USCIS conducted in the earlier decisions or compare it to USCIS's analysis in the November 2023 denial.

CONCLUSION

Because USCIS did not act arbitrarily or capriciously in denying Aravamuthan's EB-1 petition, the Court grants Defendants' motion for summary judgment and denies Aravamuthan's motion for summary judgment.

Signed June 17, 2025.

David C. Godbey
Chief United States District Judge